Good morning. May it please the Court. My name is Lauren Rainwater, and I am pro bono counsel for Angelique de Maison. We're here on appeal today to appeal two issues from the District Court's award of monetary remedies in the SEC Enforcement Actions. The first issue is that the District Court erred in awarding discouragement after the Supreme Court's decision in Kokesh because the Supreme Court's decision stripped the District Court of authority to award discouragement in SEC Enforcement Actions. The second issue is that the District Court erred in its calculation in award of all monetary remedies here. Turning to the first argument, discouragement is not an authorized remedy in SEC Enforcement Actions following the Supreme Court's decision in Kokesh. Congress has expressly identified three forms of relief available to the SEC in Enforcement Actions. And you, before we get to the merits, and I'm interested in the merits, but what do we make of the fact that your client expressly waived the right to appeal the consent judgment and agreed to the discouragement remedy, in effect? My client waived the right to appeal the form of final judgment that was attached to the consent decree. That was the final judgment entered in December 2015, in which she agreed to waive the ability to contest liability, and then also where she agreed to be enjoined from certain actions. She did not waive the right to appeal the court's award of monetary remedies, and the SEC doesn't contest that. And also, it's important to note that the consent decree does not change the fact that due to Kokesh, the District Court lacks the authority to award discouragement. The law is clear that a consent decree cannot confer on a District Court authority to do something that it doesn't otherwise have. If you look at System Federation Number 91 versus Wright, there the Supreme Court held that a consent decree must be modified because of a subsequent change in law. It also recognized that the court's authority to adopt a consent decree comes from a statute which the decree is intended to enforce. The parties have no power to require of the court continuing enforcement of rights that the statute no longer gives. Could you address the part of Kokesh that says the sole question presented in this case, etc., etc., is about statute of limitations, and then the court goes on to say nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order discouragement in SEC enforcement proceedings, or on whether the courts have properly applied discouragement principles in this context? Yes, Your Honor. The Note 3 is intended to say that the sole question before the Supreme Court in Kokesh was what is the statute of limitations for discouragement purposes. The court wasn't faced with the question of whether or not the SEC actually had the authority to seek discouragement, and I think the most faithful interpretation of Footnote 3 is that that is a reading, or that that is the Supreme Court attempting to say that we are not endorsing discouragement as an available remedy. In fact, that oral argument... But it's also, can't it also be read to say we're not saying you can't, or that the SEC has no authority to... It could also be read that way. Seek discouragement. If you look at the reasoning in Kokesh, the Supreme Court underwent this extensive analysis of whether or not discouragement was punitive, and it held that SEC discouragement in the form in which this circuit has awarded it over the last 45 years has all of the hallmarks of a penalty. In reaching that conclusion, it first found that discouragement is imposed as a consequence for violating public laws, not for violations against aggrieved individuals. Next, the Supreme Court held that SEC discouragement is imposed for punitive purposes, not remedial purposes, recognizing that its primary purpose is to deter future violations of the Securities Acts. The Supreme Court also recognized that in many cases, SEC discouragement is not compensatory. Based on these three characteristics of SEC discouragement in civil enforcement actions, the Supreme Court unequivocally held that SEC discouragement constitutes a penalty. In this case, we could lift that very same analysis and just change the last two sentences. SEC discouragement bears all the hallmarks of a penalty, therefore it cannot be awarded pursuant to a court's equitable powers. But the Supreme Court has not said that. The Supreme Court has not said that yet, correct. And haven't we been admonished, we all here on the Courts of Appeal nationwide, been admonished by the Supreme Court, don't look to look to predict what we're going to do. We don't need to look to predict what the Supreme Court is going to do. Well, they certainly avoided doing what they could have done that you're asking us to do, right? The Second Circuit is bound to look at the reasoning of Supreme Court decisions and that reasoning is directly applicable here. In Dozier v. Seaport Group Securities 832 F3D 372, the Second Circuit recognized that when an intervening Supreme Court decision casts doubt on a prior ruling, the Second Circuit can overrule its prior cases. And that footnote 3 does seem to be problematic for applying that principle when it starts out, nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order discouragement. However, you have to then take the reasoning and apply that in this context. We have to look at whether or not SEC discouragement can be equitable or if it is punitive in this circumstance, and it is. Are they, do we know whether the discouragement here is being used in a compensatory fashion and would that matter? So, that's a great question. The Kokesh decision recognized that sometimes SEC discouragement is used in a compensatory fashion. We don't know here yet if the SEC will actually find aggrieved investors and try to return the money. It seems in reading the record, there seem to be some aggrieved investors identified. There are. However, Kokesh did recognize that even if there are multiple purposes to a penalty, even if there is a compensatory purpose, a civil sanction that cannot be fairly said to be solely serving a remedial purpose is still a punishment. So, even if they do, in this circumstance, find aggrieved investors and return that money, that does not change the analysis. The analysis still falls on the fact that the SEC seeks this discouragement award to remedy, to deter, and that it is to remedy public violations. Turning to my next argument, even if SEC discouragement is an authorized remedy, the district court erred in awarding discouragement in the total amount of alleged investor losses. Here, in order to obtain discouragement, the SEC had to demonstrate a reasonable approximation of Ms. de Maison's ill-gotten gains. It didn't do that. Instead, it sought an entire $4.2 million from nine investors but made no attempt to show that that actually went to Ms. de Maison. In fact, in their briefing, they admitted that she only did not transfer all of the proceeds to the intended investments and that at least some of the proceeds went to her own purposes. This is not sufficient to establish their burden of providing a reasonable approximation of her gains. What about this court's decision in Miller, which seems to suggest that it's not just what you personally profited, but it was profits from your endeavors? That brings us back to the Kokesh issue, where the Supreme Court recognized in Kokesh that oftentimes discouragement is not used just to take back what the defendant received, and so it actually puts the defendant in the worst position. That is another piece of evidence. Miller seems to suggest that's okay. Yes. I believe the facts in Miller were different in that, in that case, in that case, the property received the entire amounts there. Here, there is no evidence that Ms. de Maison actually received the gains at issue. Thank you. Mr. Capehart. Good morning, Judge Holland. May it please the Court. I'd like to start out just by reminding the Court that we are here because Ms. de Maison repeatedly violated the federal securities laws over the course of several years, principally by selling, illegally selling to investors more than $4 million of her own unregistered securities. The district court determined that for that misconduct, Ms. de Maison should be directed to pay disgorgement, prejudgment interest, and a civil penalty. That decision is consistent with this court's precedence and was well within the discretion of the Court to fashion an appropriate remedy for Ms. de Maison's violations of federal law. I'm happy to answer any questions that the Court has, but if it's all the same, I'd like to begin with Judge Livingston's question about the waiver in this case. You are absolutely correct, Judge Livingston, that Ms. de Maison not only consented to the imposition of disgorgement in this case, but also waived her right to appeal from that judgment. There is no reason that it shouldn't be enforced now. I understand that my colleague cites two cases involving intervening changes of law with respect to consent decrees, but I think there are two important points to remember there. The first is that this is not necessarily a consent decree in the typical sense. We are not talking about a court exercising continuing supervisory jurisdiction, let's say, to enforce an injunction. And the second is that in each of those cases, there was at least a motion for Rule 60b-5 relief, which is something that Ms. de Maison did not press before the District Court. So even if they were relevant here, the procedural posture of this case would preclude Ms. de Maison from taking advantage of them. Am I understanding your position correctly that you're saying there's a waiver as to whether she can challenge the fact of disgorgement, but you're not saying that she can't challenge the amount of disgorgement? That's correct, Your Honor. She has preserved her right to challenge the amount of disgorgement, but she has absolutely foreclosed from appealing the District Court's imposition of disgorgement as a remedy in this case. Now, I believe the next question is whether the District Court could have imposed that remedy. And I would remind this Court, as I think it is necessarily aware, that there is nearly 50 years of precedent from this Court recognizing both the equitable disgorgement and the District Court's authority to impose it in commission enforcement actions. But it's not just this Court. The remedy is so well settled that Congress has not only endorsed it, as this Court recognized in Palmisano, but has ratified it by continuing to build and revise the federal securities laws around its availability. I believe all of you pointed out that Kokesh creates a tension with this, and I would submit that Kokesh did not disturb this Court's precedence or give any reason to call into doubt those myriad legislative enactments. And we know that because footnote 3 of the opinion expressly says that it is not doing so. In order for Ms. Demison's argument to have any leg to stand on at all, this Court would need to find that footnote 3, in fact, means the exact opposite of what it says. That would be a remarkable conclusion, given the clarity of the Court's language, the unanimity of the 11 other courts of appeals who have addressed this question, as well as Congress repeatedly speaking to the availability of disgorgement, which is perhaps why seven courts and at least one prior panel of this Court has already rejected the argument that Ms. Demison seeks to press here. With respect to the amount of disgorgement that Ms. Demison was ordered to pay, she doesn't contest that the unregistered securities that she sold were her own. She does not contest that the proceeds from those sales were her own. And she does not contest that she directed buyers to deposit her proceeds into the accounts in question. It, therefore, doesn't matter whether she ultimately controlled these accounts or whether she used the proceeds for her personal benefit. She controlled the distribution of her illegally obtained funds and is, therefore, liable for the funds that she dissipated as well as those she retained. And that makes sense because at bottom, disgorgement is an obligation to return a sum equal to the amount of property wrongfully obtained. It is not an obligation to replevy a specific asset. And that makes sense because if the law were otherwise, then wrongdoers could avoid disgorgement altogether simply by transferring money to a third party. That cannot be right. That is not in keeping with this Court's precedents or even a conventional understanding of disgorgement. She, with respect to the amount of prejudgment interest, I believe that her argument overlooks two fundamental principles, both of an asset freeze and prejudgment interest. The purpose of an asset freeze isn't to preserve an asset's value. It's to preserve the asset itself so that it can be used to satisfy a judgment. And the second is that prejudgment interest doesn't attach to individual assets. It attaches to the disgorgement amount as a whole. Now, consistent with these principles, this Court explained in Razmilovich that when an asset freeze is applied to disgorgement, PJI may not be awarded on the value of that asset for the period during which it was frozen. That is what the District Court did here. What Ms. Demizon is seeking is something quite different. She would like this Court to hold that even when an asset is not available to satisfy a judgment, the total amount of prejudgment interest due should be reduced by the speculative prejudgment value of an asset that is not actually available to satisfy a judgment, or excuse me, just because it was subject to a freeze order. The Commission is aware of no case that supports that position. And, in fact, Razmilovich at least implicitly refutes it because there the Court held that if the frozen funds had remained frozen for the benefit of the parallel criminal proceeding and were not applied to Mr. Razmilovich's civil disgorgement obligation, then the Commission could continue to seek prejudgment interest on the entire amount. Finally, Your Honor, Ms. Demizon does not contest that a third-tier penalty was warranted in this case, and her arguments for a reduction of a third-tier penalty fail for the same reason as her arguments for a reduction in the disgorgement award. The gross amount of pecuniary gain in this case was the same as the amount of investor losses, and the only entities that benefited from these proceeds were those from which she served as an officer or director or was a significant, if not the majority, shareholder. I understand that she makes other arguments contesting the district court's consideration of mitigating factors, but the record and the district court's judgment are clear that the court considered those factors and determined that her egregious and recurrent misconduct outweighed them. That is not an abuse of discretion. It is consistent with this court's precedents and the general discretion of the court to fashion an appropriate remedy. Are there any other questions? The Commission would ask that the district court's judgment be affirmed. Thank you, Mr. Capehart. Ms. Rainwater? Counsel for the SEC contends that Ms. de Maison's consent judgment prevents the court from reaching this issue today. However, I would ask the court to take a look at Equal Employment Opportunity Commission v. Local 638, that's 565F2D31. In that case, the Second Circuit provided that when a change in controlling law intervenes two proceedings in the same court, the judgment should be modified to conform to current law insofar as it requires a future course of conduct. We would have to agree with you that the case, which I am now blanking on, I apologize.  Kokesh, thank you, is intervening law. You would, and I'd like to address that quickly. The SEC has not identified any way in which the analysis of whether or not a disgorgement is a penalty changes when you change it from the statute of limitations context to this context when you're discussing SEC power and judicial authority. The analysis disgorgement as practiced in SEC proceedings acts as a punitive sanction intended to deter regardless of whether you're considering it in the statute of limitations context or in the present context. Nothing about shifting this frame of analysis changes the basic fact that SEC disgorgement is intended to remedy a harm to the public rather than to compensate specific victims. Likewise, while the SEC points to the fact that no circuit case has yet overturned this past precedent or recognized that Kokesh does away with the disgorgement remedy, it's worth noting that in the Ninth Circuit case, SEC v. Liu, the appellant has now filed a cert petition with the Supreme Court. The SEC declined to respond, but then the Supreme Court has now ordered it to respond by September 5th, so we may be getting some guidance from the Supreme Court in the near future. Turning to the calculation of disgorgement in this case, the SEC now argues that all of the proceeds were Ms. de Maison's because it was her shares. They didn't argue that before the district court. That's important. And they also don't dispute the fact, and didn't before the district court, that 3.5 million, 3.4 million went to the intended location, Casablanca Mining. And they also offered no evidence to dispute that almost $700,000 was repaid to investors. They contested about $315,000 of the repayments. On the prejudgment interest issue, because disgorgement is no longer an available remedy, the SEC also cannot obtain prejudgment interest. However, the court also erred in awarding prejudgment interest when all of Ms. de Maison's assets were frozen. Ms. Milovic makes clear that you can only get prejudgment interest for the period during which the defendant has use of his illegal profits. After October 2014, Ms. de Maison did not have use of any profits, so no prejudgment interest should have been awarded. And likewise, the penalty calculation was errored because it did not demonstrate Ms. de Maison's pecuniary gains. It also failed to account for her lack of scienter cooperation with the SEC and with her destitute financial condition. Thank you. Thank you very much. Thank you both. We'll reserve decision in this case.